OPINION
{¶ 1} Defendant-appellant, Debra A. Long, appeals her conviction and sentence in the Columbiana County Common Pleas Court for theft.
 {¶ 2} On January 27, 2006, the Columbiana County Grand Jury indicted Long on one count of theft of property valued at more than $500 but less than $5,000, in violation of R.C. 2913.02(A)(2), a fifth degree felony under R.C. 2913.02(B)(2). A bill of particulars filed by plaintiff-appellee, State of Ohio, on March 22, 2006, provides a few details that led to the indictment. Long was a manager of the Country Square Mobile Park, owned by Ronald Holley. As manager, Long received a $1,000 money order from Renee Milton which was intended as a down payment on one of Holley's trailers at the park. On August 12, 2005, Long cashed the money order and appropriated it for her own use.
{¶ ?} Long pleaded not guilty and was appointed counsel. The case proceeded to discovery and other pretrial matters. Subsequently, the State and Long reached a felony plea agreement. On April 7, 2006, Long withdrew her previous not guilty plea and pleaded guilty as charged.
 {¶ 4} A sentencing hearing was held on June 9, 2006. Pursuant to the felony plea agreement, the State recommended a seven-month prison term. Although Long's counsel argued for a lesser term, the trial court sentenced Long to a seven-month prison term to be served consecutively with another term she was then serving for a probation violation in Carroll County.
 {¶ 5} Long filed a timely notice of appeal on June 16, 2006, and she was appointed appellate counsel. On November 21, 2006, Long's counsel filed a "no merit" brief (i.e., Toney brief) and asked to withdraw as counsel.
 {¶ 6} In State v. Toney (1970), 23 Ohio App.2d 203, 52 O.O.2d 304,262 N.E.2d 419, this court set forth in its syllabus the procedure to be used when counsel of record determines that an indigent's appeal is frivolous:
 {¶ 7} "3. Where a court-appointed counsel, with long and extensive experience in criminal practice, concludes that the indigent's appeal is frivolous and that there is no assignment of error which could be arguably supported on appeal, he *Page 2 
should so advise the appointing court by brief and request that he be permitted to withdraw as counsel of record.
 {¶ 8} "4. Court-appointed counsel's conclusions and motion to withdraw as counsel of record should be transmitted forthwith to the indigent, and the indigent should be granted time to raise any points that he chooses, pro se.
 {¶ 9} "5. It is the duty of the Court of Appeals to fully examine the proceedings in the trial court, the brief of appointed counsel, the arguments pro se of the indigent, and then determine whether or not the appeal is wholly frivolous.
 {¶ 10} "* * *
 {¶ 11} "7. Where the Court of Appeals determines that an indigent's appeal is wholly frivolous, the motion of court-appointed counsel to withdraw as counsel of record should be allowed, and the judgment of the trial court should be affirmed."
 {¶ 12} As stated above, appellant's appointed appellate counsel filed a Toney brief on November 21, 2006. On February 3, 2007, this Court informed appellant that her counsel had filed a Toney brief and granted her thirty days to file a brief raising any assignments of error. To date, appellant has not filed a pro se brief. Therefore, we will proceed to independently examine the record to determine if the appeal is wholly frivolous.
 {¶ 13} Long pleaded guilty pursuant to a Crim.R. 11(F) felony plea agreement and was sentenced thereafter. Therefore, only two main issues that could be appealed present themselves — the plea hearing and sentencing.
 {¶ 14} When determining the voluntariness of a plea, this Court must consider all of the relevant circumstances surrounding it. State v.Trubee, 3d Dist. No. 9-03-65, 2005-Ohio-552, at ¶ 8, citing Brady v.United States (1970), 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747. Pursuant to Crim.R. 11(C)(2), the trial court must follow a certain procedure for accepting guilty pleas in felony cases. Before the court can accept a guilty plea to a felony charge, it must conduct a colloquy with the defendant to determine that he or she understands the plea they are entering and the rights being voluntarily waived. Crim.R. 11(C)(2). If the plea is not knowing and voluntary, it *Page 3 
has been obtained in violation of due process and is void. State v.Martinez, 7th Dist. No. 03-MA-196, 2004-Ohio-6806, at ¶ 11, citingBoykin v. Alabama (1969), 395 U.S. 238, 243, 89 S.Ct. 1709,23 L.Ed.2d 274.
 {¶ 15} A trial court must strictly comply with Crim.R. 11(C)(2) pertaining to the waiver of federal constitutional rights.Martinez, 7th Dist. No. 03-MA-196, at ¶ 12. These rights include the right against self-incrimination, the right to a jury trial, the right to confront one's accusers, and the right to compel witnesses to testify by compulsory process. State v. Tucci, 7th Dist. No. 01-CA-234, 2002-Ohio-6903, at ¶ 11, citing Boykin, supra; State v. Ballard (1981),66 Ohio St.2d 473, 478, 423 N.E.2d 115, fn. 4.
 {¶ 16} A trial court need only substantially comply with Crim.R. 11(C)(2) pertaining to non-constitutional rights such as informing the defendant of "the nature of the charges with an understanding of the law in relation to the facts, the maximum penalty, and that after entering a guilty plea or a no contest plea, the court may proceed to judgment and sentence." Martinez, supra, at ¶ 12, citing Crim.R. 11(C)(2)(a)(b).
 {¶ 17} At the change of plea hearing, the colloquy between the trial court and Long demonstrates that she voluntarily and intelligently entered her guilty plea.
 {¶ 18} Of particular importance in this case was Long's state of mind, given her diagnosis of mental illness. The trial court made sure she understood what was going on as follows:
 {¶ 19} "THE COURT: Are you today under the influence of alcohol, drugs, or medications of any kind?
 {¶ 20} "MS. LONG: No.
 {¶ 21} "THE COURT: Are you undergoing counseling for mental illness or otherwise in a doctor's care?
 {¶ 22} "MS. LONG: I do sometimes. I go for counseling.
 {¶ 23} "THE COURT: Okay. Are you taking medications at all?
 {¶ 24} "MS. LONG: Yes. *Page 4 
 {¶ 25} "THE COURT: I assume that they do not interfere with your ability to understand what's occurring here; is that correct?
 {¶ 26} "MS. LONG: That's correct.
 {¶ 27} "THE COURT: Do you feel you're fully sane and in control of your mental faculties?
 {¶ 28} "MS. LONG: Sometimes. If I'm off my medication, I'm not.
 {¶ 29} "THE COURT: Okay. How do you feel that you are today? Able to understand everything?
 {¶ 30} "MS. LONG: Yes, I understand everything today." (Tr. 6-7.)
 {¶ 31} Next, the trial court strictly complied with Crim.R. 11(C)(2)(c) by informing Long of the constitutional rights she was waiving by entering a guilty plea. The court informed Long of her constitutional rights as follows:
 {¶ 32} "THE COURT: * * * You do have a right to a trial before a jury of impartial citizens, to have your lawyer present throughout the trial. You could have the trial before me alone sitting without a jury. You would get to choose whichever kind of trial you wanted, jury or non-jury.
{¶ ??} "In either situation you would be presumed innocent. The prosecution would have to prove your guilt beyond a reasonable doubt, but every defense you might have could be introduced in your favor no matter what that defense might be and you could require witnesses favorable to you to be here and testify and I would order them to be here and testify for you. You would be able to confront all witnesses against you face-to-face, have your attorney cross-examine them to be sure they are telling the truth, and you yourself would not have to testify. You don't have to get on the stand unless you want to. You could remain silent and not testify at the trial. That is your choice and nobody could comment about your decision in that regard.
 {¶ 34} "Do you understand?
 {¶ 35} "MS. LONG: Yes, I do." (Tr. 10-11.)
 {¶ 36} The court also substantially complied with Crim.R. 11(C)(2)(a) and (b). It informed Long of the charge against her that the State would have to prove, *Page 5 
including the specific elements of the crime as applied to the facts of her case. (Tr. 12-13). The court went on to explain to Long the possible punishment she faced as follows:
 {¶ 37} "THE COURT: * * * The minimum sentence for the offense to which you have indicated you wish to plead guilty is a six-moth term of incarceration in a state correctional facility. The maximum sentence for the offense to which you have indicated you wish to plead guilty is a twelve-month term of incarceration in a state correctional facility and a fine of $2,500. In addition, the Court could impose court costs, restitution, and other financial sanctions.
 {¶ 38} "I'm also obligated to advise you that in the event you should be sent to prison in this case, upon your release from prison, you could be subject to a period of up to three years of post-release control under the authority of the Adult Parole Authority. You have to live under certain terms and condition for the violation of which there would be penalties, the most serious penalty would be a period of reincarceration. Do you understand?
 {¶ 39} "MS. LONG: Yes, I do." (Tr. 9-10.)
 {¶ 40} After accepting Long's plea, the trial court found that it had advised the defendant to the effect of her plea and that appellant entered the plea freely and voluntarily with full knowledge of its consequences. (Tr. 18).
 {¶ 41} Thus, the trial court complied with Crim.R. 11(C)(2)'s requirements by informing Long of her rights and her potential sentence. Furthermore, to ensure that Long understood all the information the court presented to her, the court asked Long to respond to questions. Long's responses proved that she had full knowledge of the consequences of a guilty plea. Nothing in the record indicates that Long did not fully understand the consequences of a guilty plea.
 {¶ 42} Next, we will address the only other potentially appealable issue-sentencing.
 {¶ 43} The sentence in this case occurred after the Ohio Supreme Court's decision in State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856. It appears the trial *Page 6 
court followed the mandate in Foster. The trial court did not make any findings that could be unconstitutional.
 {¶ 44} The trial court noted that Long had a history of criminal convictions and had served two prior prison terms. Concerning the present offense, the trial court noted that Long held a position of trust and that there was economic loss. The court also noted the need to protect the public and the need to punish. It also referenced the likeliness of recidivism. However, all of these factors fall under R.C.2929.11 and 2929.12, which have not been rendered unconstitutional. In fact, in Fosters companion case of State v. Mathis, 109 Ohio St.3d 54,2006-Ohio-855, the Ohio Supreme Court explained:
 {¶ 45} "Although after Foster the trial court is no longer compelled to make findings and give reasons at the sentencing hearing because R.C.2929.19(B)(2) has been excised, nevertheless, in exercising its discretion, the court must carefully consider the statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender. In addition, the sentencing court must be guided by statutes that are specific to the case itself."Mathis, 109 Ohio St.3d 54, at ¶ 38.
 {¶ 46} Thus, the trial court's consideration of those factors did not amount to error. In addition, there is no other error in sentencing. Long was convicted of theft, in violation of R.C. 2913.02(A)(2), a fifth degree felony under R.C. 2913.02(B)(2), and received a seven-month prison term. For a fifth-degree felony, the sentencing court may impose a prison term of six, seven, eight, nine, ten, eleven, or twelve months. R.C. 2929.14(A)(5). Since her sentence fell within that range, there is no error with it. State v. Koffel, 7th Dist. No. 06 CO 36,2007-Ohio-3177. *Page 7 
 {¶ 47} The judgment of the trial court is hereby affirmed and counsel's motion to withdraw is granted.
Vukovich, J., concurs.
 DeGenaro, J., concurs. *Page 1